UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THOMAS L. MCABEE,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 1:21-cv-1296-DAD-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 22, 31)** |

## I.     <u>Introduction</u>

Plaintiff Thomas Mcabee seeks judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income pursuant to Title XVI of the Social Security Act.[1]

## II.     <u>Factual and Procedural Background</u>

Plaintiff applied for benefits on April 4, 2018.  The Commissioner denied the applications initially on August 15, 2018, and on reconsideration on November 5, 2018.  AR 81–85; 91–96. Plaintiff appeared for a hearing before an ALJ on September 11, 2020.  AR 35–57.  The ALJ issued an unfavorable decision on September 28, 2020.  AR 17–34.  The Appeals Council denied review on January 12, 2021 (AR 5–10) and this appeal followed.

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Doc. 7, 13.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of April 4, 2018.  AR 22.  At step two the ALJ found that Plaintiff had the following severe impairments: history of right foot and leg fracture requiring surgical intervention; history of splenectomy; history of head injury; degenerative changes in the lumbar and cervical spine; and left carpal tunnel syndrome.  AR 22.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 22–23.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 CFR 416.967(c) with additional postural and environmental restrictions not at issue.  AR 23–28.

At step four the ALJ concluded that Plaintiff had no past relevant work.  AR 28.  At step five, in reliance on the Vocational Expert's testimony, the ALJ found that Plaintiff could perform the following jobs existing in significant numbers in the national economy: hand packager, dining room attendant and laundry worker II.  AR 28–29.  The ALJ therefore concluded that Plaintiff was not disabled since the application date of April 4, 2018.  AR 29.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.   **Issue Presented**

Plaintiff asserts two claims of error: 1) the RFC for six hours of standing/walking is not supported by substantial evidence; and 2) the RFC fails to account for manipulative limitations due to carpal tunnel syndrome.

### A.   **Legal Standard**

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p. In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective

medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.  Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit recently clarified in *Ferguson*, although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment other than medication; 6) other measures the claimant uses to relieve pain or other symptom; and 7)) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

## B. Analysis

### 1. Standing/Walking 6 of 8 Hours

On August 26, 2019, Dr. Stoltz conducted a consultative physical examination (AR 331–35) of Plaintiff at the request of the agency and completed an associated functional opinion (AR 336–41).  The ALJ found the opinion "generally persuasive" in that Dr. Stolz opined Plaintiff was capable of a "wide range of medium work."   AR 27.   Plaintiff disagrees with the ALJ's interpretation of Dr. Stoltz's opinion and explains as follows:

> However, a review Dr. Stoltz's CE report reveals that he limited Mr. Mcabee to walking only 4 hours of an 8 hour work day for two hours at a time, and to standing for only two hours at a time of an 8 hour workday, which is not a limitation compatible with medium work activity (AR 337) but rather per the SSA definitions of sedentary, light and medium work activity, is consistent with a "sedentary" or "less than light" RFC and not a full range of light or medium RFC, both of which require "standing or walking off and on, for a total of approximately 6-hours in an 8-hour workday."

Br. at 10.

Dr. Stolz's opinion was a check-box questionnaire which leaves little room for interpretation.  Plaintiff accurately recites the total durational and consecutive limitations Dr. Stolz identified as to walking (4 hours and 2 hours, respectively), but only recites the consecutive limitation Dr. Stoltz identified as to standing (2 hours) while omitting Dr. Stoltz's response as to the total durational standing.  Dr. Stolz in fact opined that Plaintiff could stand for a total of 8 hours in an 8-hour workday.  AR 337.  Social Security Ruling 83-10 explains that "A full range of medium work requires standing *or* walking, off and on, for a total of approximately 6 hours in an 8-hour workday."  SSR 83-10 (emphasis added).  It does not state that the claimant must be able to stand 6 of 8 hours independently of any walking, nor must the claimant be able to walk 6 of 8 hours independently of any standing.  Plaintiff identifies no legal authority for this proposition, nor is the undersigned aware of any.  Dr. Stolz opined that Plaintiff could walk a total of 4 hours in an 8-hour day and could stand a total of 8 hours in an 8-hour day.  This is consistent with SSR 83-10's explanation that medium work requires "standing *or* walking" 6 of 8 hours.  SSR 83-10 (emphasis added).

Plaintiff further contends that the ALJ failed to discuss significant medical findings including: 1- reduced lumbar ROM in flexion of 70-75 degrees; 2- deformities of the toes on his right foot; 3- a very small hyperpigmented mole on the left foot; 4- a slight limp on the right; 5- moderate cervical joint degeneration; 6- mild cervical neural foraminal narrowing; 7- soft tissue fullness of the great toe with tenderness to palpation; 8- reduced cervical ROM; 9- lumbar tenderness and positive straight leg raise; 10- lumbar facet arthropathy and modest disc desiccation; 11- skin biopsy consistent with mild length-dependent small fiber neuropathy; and 12- additional examples of cervical and lumbar paraspinal tenderness, muscle spasm, and limited ROM.

Even though the ALJ did discuss this evidence throughout the decision (AR 24-28), Plaintiff argues that the ALJ failed to reconcile these findings with the RFC for medium work with 6 hours of standing/walking. Similarly, Plaintiff recites clinical abnormalities, many of which have no apparent connection to standing/walking[2], but neglects to explain which of the clinical abnormalities undermine his ability to stand or walk 6 of 8 hours in a workday.

Plaintiff also disputes the ALJ's characterization of the clinical abnormalities as "modest" or "unremarkable." However, these characterizations are reasonably apparent even from Plaintiff's recitation of the abnormalities in question which were often described in benign terms such as: "very small" hyperpigmented mole; "slight limp" on the right;" "mild" cervical neural foraminal narrowing; "modest" lumbar disc desiccation; and "mild" length-dependent small fiber neuropathy.

Finally, Plaintiff disputes the ALJ's characterization of his treatment regimen as "conservative" notwithstanding that it included opioids and Toradol injections. As to the use of opioids, whether they are properly characterized as conservative is one of the most frequently raised issues in claims involving chronic pain, yet there is no controlling authority on the issue. A more

---

[2] Such as limited lumbar ROM in flexion, a finding more related to postural limitations such as stooping/bending which the ALJ incorporated into the RFC, than to limitations in standing and walking.

7

helpful approach to this issue might involve a discussion of the type, dosage, frequency, and duration of the opioid treatment. Rather here, Plaintiff asserts little more than the fact that he was prescribed Norco and that Norco is not conservative.  Without more, this point does not state a compelling basis for remand.  As to the Toradol injections, Plaintiff cites authority questioning whether "epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment.' *Garrison*, 759 F.3d at 1015 n.20.  However, Toradol (Ketorolac) is not a steroid and is not injected into the spinal epidural space, rather it is a non-steroidal anti-inflammatory injected intramuscularly often in a doctor's office setting.[3]

In sum, Plaintiff identifies no error in the ALJ's conclusion that he could stand and walk 6 of 8 hours, a conclusion supported by: 1- the opinions of both consultative examiners, Drs. Siekerkotte and Stoltz; 2- the relatively benign diagnostic and physical examination findings; and 3- the non-invasive treatment Plaintiff received.

## 2.  Manipulative Limitations

Plaintiff disputes the ALJ's reasoning for omitting manipulative limitations from the RFC (reaching, handling, feeling, fingering, gripping, grasping, pushing or pulling) due to carpal tunnel syndrome (CTS) which the ALJ addressed as follows:

> August 2018 EMG/NCV studies also showed left median neuropathy consistent with carpal tunnel syndrome, with sensory fibers affected only, but no evidence of left cervical radiculopathy or any other nerve entrapment neuropathies. Exhibit 6F/15.
>
> . . .
>
> Although the claimant testified that he drops things on a daily basis, he was noted to have 5+/5 strength throughout the upper extremities, including grip strength, during the July 2018 consultative examination. Exhibit 7F/6; see also Exhibits 3F/30; 8F/3. Neither providers nor examiners report upper extremity sensation deficits with any consistency. Exhibits 6F/8; 8F/5; 13F/23. As indicated above, the record also shows that the claimant reports welding, weeding, and helping his mother repair and place sales items at a swap meet booth. Such reported activities

---

[3] https://medlineplus.gov/druginfo/meds/a614011.html

are inconsistent with the alleged degree of functional loss. While I have considered evidence of carpal tunnel syndrome in the left nondominant hand in assessing exertional restrictions, I do not find that the evidence supports manipulative restrictions. (AR 26).

Here, Plaintiff contends the ALJ discounted the significance of the NCS and EMG study documenting, in Plaintiff's words: "abnormal left upper nerve conduction study with electrodiagnostic evidence of left median neuropathy localized at the wrist consistent with carpal tunnel syndrome with sensory fibers affected" (AR 312). Br. at 15. Plaintiff, while quoting the diagnostic impression, omits the word "only" after "sensory fibers affected", and likewise omits the preceding sentence noting the needle EMG portion was normal. Both are important omissions as the electro-diagnostician stated that "only" sensory fibers were affected, the implication being that motor fibers were not affected, which is consistent with the normal EMG portion of the study.

Plaintiff further contends the ALJ impermissibly stepped into the role of a doctor by suggesting, without explanation, that lack of left cervical radiculopathy or other entrapment neuropathy undermines the significance of the positive NCS for left-sided carpal tunnel. Br. at 15. To the contrary, the ALJ was simply reciting the diagnostic impression in full the last sentence of which noted the absence of evidence of cervical radiculopathy or other entrapment neuropathy. It was the electro-diagnostician, not the ALJ, who initially determined those negative findings were worth mentioning, likely in response to Plaintiff's complaint of "neck pain with paresthesia that radiates into the left hand." AR 312. Beyond this assertion, Plaintiff's point is reasonably well taken in that regardless of the site of nerve compression, whether it was in the cervical spine or the wrist, the median nerve was indeed compressed as confirmed by the NCS, and that compression affected the integrity of his sensory nerve fibers.

As to grip strength and sensation, the ALJ acknowledged that the record reflected that in June 2018 Plaintiff had 5/5 grip strength as noted by the first consultative examiner, Dr. Siekerkotte. AR 26 (citing AR 330). The ALJ also referenced the second consultative examination with Dr.

9

Stoltz which supported the same finding.  Dr. Stolz noted 5/5 strength in the upper extremities, and separately set forth grip strength values measured by a hand dynamometer which reflected grip strength between 50 and 70 pounds on the right, and 80 pounds on the left.[4]  AR 333.   The ALJ also noted that sensation was reported as normal by the consultative examiner and Plaintiff's own clinicians.  AR 26 (citing AR 305, 335, 412).  Given this, it can safely be said that the ALJ did not take on the role of doctor when emphasizing normal grip strength and sensation as these findings have self-evident relevance to one's capacity to perform manipulative activities.  In addition, the positive NCS study for left sided CTS did not require the ALJ to credit Plaintiff's subjective reports or FNP Piceno's opinion concerning Plaintiff's limited use of his left hand.

Plaintiff also suggests the ALJ placed undue significance on Plaintiff's reported activities of "welding, weeding, and helping his mother repair and place sales items at a swap meet booth," which Plaintiff contends are only reflective of upper body strength and not the ability to perform fine manipulations, which Plaintiff asserts is a key distinction under the social security rulings. Plaintiff explains as follows:

> For example, per SSR 85-15: As a general rule, limitations of fine manual dexterity have greater adjudicative significance--in terms of relative numbers of jobs in which the function is required-- as the person's exertional RFC decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work." Two things can be true at the same time. That is, the evidence could support both a finding of a light to medium RFC solely in terms of Mr. Mcabee's ability to lift and carry heavy objects while simultaneously supporting substantial fine and gross manipulative limitations for an example, on an ability to type or to perform activities requiring fine motor skills such as writing or buttoning.

Br. at 19.

This argument is largely predicated on the merit of Plaintiff's first argument, namely that

---

[4] Although "the exact cutoffs are still up for debate," weak grip strength is considered less than 57 pounds for people assigned male at birth and less than 36 pounds for people assigned female at birth. https://health.clevelandclinic.org/grip-strength

he cannot meet the standing/walking demands of light or medium exertional work and would therefore be limited to sedentary work.  As set forth above, this argument is unpersuasive.   The ALJ appropriately assessed an RFC for medium work, whereas the importance of fine manual dexterity for the performance of sedentary work is not relevant.

Plaintiff further emphasizes an examination dated November 8, 2018 at Lags Medical Center documenting significant ROM deficiencies of the left wrist.  Br. at 15 (citing AR 305).  But, as the ALJ noted, at both consultative examinations which occurred on July 28, 2019 and August 26, 2019, range of motion in both wrists was normal.  AR 26 (citing AR 329, 334).  When as here, the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

Finally, Plaintiff points to the opinion of her provider FNP Piceno that Plaintiff had significant manipulative limitations.  AR 423.  Although the ALJ's discussion of that opinion was limited, the reasoning already identified for the omission of manipulative limitations would apply with equal force to the ALJ's rejection of the contrary opinion of FNP Piceno, thus no need to repeat that reasoning.

In sum, the ALJ reasonably concluded that no manipulative limitations were warranted where the record demonstrated that unilateral CTS affected only the sensory fibers of Plaintiff's non-dominant hand, and where the opinions of the consultative examiners opined that Plaintiff had no manipulative limitations.  This conclusion is not overcome by one countervailing examination at Lags noting ROM deficiencies, nor the contrary opinion of FNP Piceno.

Lastly, the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony as to his hand symptomology and limitations, namely the opinions of the consultative examiners, the normal findings as to grip strength, sensation, and ROM, and Plaintiff's reported activities of

weeding, welding and helping his mother repair and place sales items at a swap meet booth.

## VI.     Recommendations

For the reasons stated above, the recommendation is as follows:

1.     That Plaintiff's motion for summary judgment (Doc. 22) be **DENIED.**

2.     That Defendant's cross-motion (Doc. 31) be **GRANTED.**

3.     That the decision of the Commissioner of Social Security be **AFFIRMED**.

4.     That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Thomas L. McAbee.

## VII.     Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __**August 14, 2024**__                    _____**/s/ Gary S. Austin**_
                                                  UNITED STATES MAGISTRATE JUDGE

12